GARVIN v. GARVIN.

Where a purchaser of land from a judgment debtor takes deed, goes into possession and holds adversely, the right of action for its recovery is barred after ten years, although the legal title was acquired by the plaintiff, judgment creditor, who became the purchaser at sheriff's sale under his pre-existing lien, only seven years before action brought.

Before ALDRICH, J., Aiken, April, 1888.

Action by John Garvin against R. C. Garvin, commenced February 16, 1885. The opinion states the case.

*Messrs. Izlar & Glaze,* for appellant.

*Messrs. Henderson Bros.* and *Croft & Dunlap,* contra.

November 25, 1889. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This action was brought to recover a tract of land of 900 acres, known in the proceedings as the "mill tract." The case is another phase of a controversy which has been several times in this court, and in order to make it intelligible, it will be necessary to give a short statement of the facts out of which it arises. The land lies in Aiken County, and was once the property of Robert Garvin, who lived there. He is the brother of the plaintiff, John, and the father of the defendant, R. C. Garvin, and under him they both claim—the plaintiff by a deed from the sheriff, who sold the land under an execution of his own as the property of Robert Garvin, January 7, 1878, and the defendant under a deed direct from the judgment debtor (Robert) prior to the aforesaid sheriff's sale, viz., on April 15, 1874.

It seems that there was an old judgment, *John Fox* v. *Robert Garvin, John Garvin, et al.,* lodged in *Lexington County* (1868). Upon this judgment John Garvin claimed to have paid as surety for his brother Robert, the principal, the sum of $1,836.40, and to that extent to be the owner of the judgment under the provision as to subrogation in section 2180 of the General Statutes. John procured an assignment of the judgment to himself in 1872,

and afterwards, on August 5, 1875, had a "transcript" of it entered in the clerk's office of Aiken County, where Robert lived, and had it levied on the lands of Robert, including the "mill tract" in dispute, which, as stated, had been previously conveyed to the defendant. Thereupon Robert instituted proceedings against John, contesting the validity by subrogation of the aforesaid judgment, and Judge Maher granted a temporary injunction against the sale of Robert's lands (May, 1876). Upon the trial of that case, Judge Reed rendered a decree in favor of John for the $1,836.40, claimed to have been paid by him as surety; and another judgment for that identical amount was entered in Aiken County. This judgment conformed to the record in which it was rendered, and was entitled *Robert Garvin* v. *John Garvin* (Sept. 16, 1877). Under this last judgment the property of Robert was levied and sold (including the mill tract then in possession of the defendant), and bid off by John, the judgment creditor, who took sheriff's titles for the same on January 7, 1878.

Long litigation ensued between the brothers, John and Robert, as to the legality of the judgment and execution under which Robert's lands were sold; but we need not go into that now, except to say that the controversy was finally ended by the court sustaining the validity of the judgment. See 14 S. C., 630; 21 *Id.*, 84 and 91; and 27 *Id.*, 478. Then John Garvin, as purchaser, brought suit for the different tracts of land which he had bid off at the sheriff's sales under his own judgment, and finding the defendant, R. C. Garvin, in possession of a part of the mill tract, he brought this action against him to recover the land on February 15, 1885, ten years, ten months, and one day after the defendant in execution (Robert) had conveyed the land to him. The defendant denied the plaintiff's right to recover, and interposed, (1) a general denial; (2) adverse possession for more than ten years, and the statute of limitations; (3) "That he entered into possession of 500 acres of the mill tract, under an agreement with Robert Garvin, the owner of the mill tract, to purchase the said 500 acres; that having fully complied with the terms of the contract to purchase, the said Robert Garvin executed to the defendant a deed of conveyance in fee simple to said 500 acres. That there was a continued occupation and possession of said 500

acres by the defendant under claim of title in fee for ten years last before the commencement of this action, and denying each and every allegation of the complaint not in the third defence specifically admitted," &c.   The case has been in this court before.   Upon the first trial, the Circuit Judge held that the (old) Fox judgment was merged in the subsequent one for the same money of *Garvin* v. *Garvin*, entered under Judge Reed's decree in Aiken County, September, 1877, and therefore the plaintiff had no lien upon the property of the defendant in execution (Robert) prior to that time, and consequently there was a verdict "for the defendant" for the land which had been previously conveyed to him.   But upon appeal that ruling was reversed as error, and a new trial was granted on that ground alone.   See *Garvin* v. *Garvin*, 27 S. C., 474.

The new trial ordered was had before Judge Aldrich and a jury.   It being then adjudged that the old Fox judgment was not merged in that of Garvin v. Garvin, entered under Judge Reed's decree, but that the plaintiff was entitled also to the lien of the older judgment, the principal question then considered was in reference to the statute of limitations and as to the effect of the adverse possession of the defendant as against John Garvin, the plaintiff.   Both parties submitted requests to charge, some of which the judge charged, and others he charged in modified form. The jury found "for the plaintiff the land in dispute," and the defendant appeals to this court on various exceptions, which are all printed in the Brief.   They complain of error in several particulars, in respect to certain alleged acknowledgments of title, the admission of certain incompetent evidence, that the judge charged the jury upon the facts, &c., &c,   But from the view which the court takes, it will not be necessary to consider any of the exceptions other than those which allege error in the principles announced as to the effect of the defendant's adverse possession under the conveyances to him, and the statute of limitations. As the rulings upon that subject may affect somewhat the other questions, we think it safer and better for both parties not to consider them now.

"Exception 4. Because the Circuit Judge erred in charging the jury as requested by the plaintiff, as follows:

" 'That when on January 7, 1878, the sheriff sold the land in dispute as the property of Robert Garvin, the lien of the Fox judgment on said land was valid and binding, and that the deed of the sheriff conveying said land to John Garvin gave him a title paramount and superior to that of the defendant, R. Garvin, from his father, dated April 15, 1874.'

" 'That the legal title to the premises having been established in the plaintiff under his sheriff's deed, he is presumed under the law to have been in possession of the premises within the time required by law, to wit, ten years; unless it shall appear that such premises have been held and possessed adversely to such legal title for ten years before the commencement of the action.'

" 'If the legal title of John Garvin, the plaintiff, accrued on January 7, 1878, and this action was brought on February 16, 1885, therefore as ten years did not exist between the former and the latter date, the plea of adverse possession cannot avail the defendant, and as a matter of law the plaintiff must have a verdict.'."

"Exception 7. Because the Circuit Judge erred in charging the jury as follows: 'The defendant's title is dated April 15, 1874, and the suit was commenced on February 16, 1885, less than ten years after the date of his title,' " &c.

It was undoubtedly adjudged upon the former appeal that the Fox judgment was not merged in that of Garvin *v.* Garvin subsequently recovered, and that the plaintiff was entitled to the benefit of the older lien. Nothing, however, was then ruled (for the point was not made) as to the time when the Fox judgment in Lexington County acquired a lien upon the property of the defendant in execution (Robert) in Aiken County. It seems to have been taken for granted that, as John Garvin was entitled to the lien of the Fox judgment, it had a lien *propriore vigore* upon property of the defendant in Aiken County, from its date (1868), or at least from the time it was assigned to John Garvin (1872). It appears that the Fox judgment was in Lexington, and that no "transcript" of it was filed in Aiken County until August 5, 1875, which was after the defendant in execution had conveyed the 500 acres to the defendant, R. C. Garvin (April 15, 1874). It is quite clear that if that judgment had been entered

in Lexington after 1870, it would not have had a lien upon property in Aiken County until it was regularly "transcripted" to that county.   See *Code*, § 310.

The Fox judgment, however, was entered at Lexington in 1868, which was before the Code; but we are unable to see why the interest of John Garvin in the judgment by subrogation should not, like that of the original plaintiff, Fox, be subject to the act of 1849, which was certainly of force in 1868, and provided as follows: "That from and after the passage of this act, no judgment nor any execution issued thereon shall, as against any creditor or creditors of the party against whom such judgment shall have been obtained, by confession or otherwise, or against any purchaser or purchasers for valuable consideration, have any lien on the property, or any part thereof, of any such party, except in the district (county) where the judgment is first entered and execution lodged, until an execution issued thereon be lodged in the proper office in the district (county) where such party usually resides, at the time when such judgment was obtained: Provided, nevertheless, that this act shall have no force or effect as to defendants who are non-residents of the State and transient persons," &c.   11 *Stat.*, 582.   It is true that the title of this act appears in the list of "acts, ordinances, and resolves which have expired, or have been or are hereby expressly repealed," &c., contained in the General Statutes of 1872.   But in considering the charge of the judge on the face of the papers themselves, and for that purpose assuming that the deed under which the defendant entered was *bona fide*, it seems to us that it is at least worthy of consideration whether the Fox judgment ever acquired a lien upon the land in Aiken County, conveyed by the judgment debtor to the defendant on April 15, 1874.

But passing that, without making any ruling upon the subject, and taking the view of the plaintiff, that the Fox judgment in Lexington had a lien upon the property of the judgment debtor in Aiken County, before the conveyance was executed to the defendant, R. C. Garvin, it seems to us that it was not in accordance with the decided cases, to hold "that the defendant's title is dated April 15, 1874, and the suit was commenced on February 16, 1885, less than ten years after the date of his title.   * * *

He (defendant) claims that he has been in adverse possession more than ten years, and that he has acquired what the books call the statutory title—a title under the statutes. Well, now, the adverse possession must be against the party who has the right of action. John Garvin did not have the right of action until he got title from the sheriff under the Fox judgment, which bears date January 7, 1878. You see, by calculation, from April 15, 1874, to January 7, 1878, does not make the period of ten years," &c. The deed to the defendant bears date April 15, 1874, and the action was brought February 16, 1885, which was not "less than ten years after the date of his title," as reported to have been charged by the judge. We do not, however, lay any great stress on that, but assume that it was a mistake in the printing or some other way; for the most cursory inspection of the papers shows that the period in question was 10 years, 10 months, and 1 day.

We rather suppose that the judge intended to say what he had before stated, viz., that the possession of the defendant as grantee of the debtor could not be adverse as against John Garvin, while he (John) was only a judgment creditor, with a lien on the property of the grantor, Robert; but that such possession only became adverse to John when he purchased the land at sheriff's sale (January 7, 1878); and from that time until the action was commenced "was less than ten years." Thus understood, was the charge error? It is not to be denied that there has been some confusion, or at least want of clearness. in the authorities upon that very point, viz., whether the possession of a grantee from a defendant in execution can be considered as adverse to the lien of the judgment creditor, so as, after the lapse of the statutory period, to bar such judgment creditor. Upon the question it seems to be considered that there is a wide difference between the possession of a mere naked trespasser and that of a *bona fide* purchaser from the judgment debtor, whose deed carries all his interest to his grantee. In the case at bar, the possession of the defendant was as purchaser under a regular deed from the judgment debtor. The deed bears date April 15, 1874, and for nearly four years thereafter, down to the sale of the sheriff (January 7, 1878), John Garvin had only the lien of his judgment against his debtor, Robert. At that sale, however, he bid off the land sold

as the property of Robert, and had sheriff's titles for something over seven additional years, down to February 16, 1885, when the action was commenced. These two periods added together make more than the ten years required by the statute, and the question, therefore, is, whether the possession of the defendant as purchaser for that whole time gives him a statutory title as against John, who, for about four years of the time, was a judgment creditor of Robert, and for the remainder of the time held sheriff's titles, executed upon a sale of the land as the property of Robert?

In view of the declared policy of the statute of limitations to quiet possessions, it has been held, that "one having possession of land may hold the same adversely, and acquire title by such possession for the statutory period, although there was a judgment against the owner when the possession commenced, or one was recovered against him afterwards, and the land was sold by the sheriff before the statutory period was complete." See *Lamar* v. *Raysor*, 7 Rich., 510; *McRaa* v. *Smith*, 2 Bay, 339; *Pegues* v. *Warley*, 14 S. C., 180; 6 Wait Act. & Def., 444. In defence of this doctrine, as applied to the lien of a judgment, but not of a mortgage, we can add nothing to what was so truly said by Judge Withers, in delivering the judgment of the old Court of Appeals in the case first above cited: "The case of *McRaa* v. *Smith* established a rule which has never been disavowed, to wit, that one occupying land, using and claiming it as his own, acquires immunity against action, even by the creditor of the judgment debtor, or the purchaser at sheriff's sale under the judgment, after the proper lapse of time. Judge Waties so held, and his judgment was affirmed on appeal. * * * Though, strictly, it is true that a judgment creditor as such cannot sue a trespasser on the property of his debtor, nor a purchaser under the judgment, until after he has become such, yet it is equally true (as was said in *Cholett* v. *Hart*, 2 Bay, 156), that the first has only himself to blame by voluntary quiescence, with a full protection at command all the time, and the last can buy from the sheriff no more than existed or remained in the judgment debtor, and is as well concluded by the doctrine of *caveat emptor*, where the judgment debtor has been divested by transaction *in pais*, as

where the judgment debtor never had any title to the property sold," &c.

True, it was held in the case of *Pegues* v. *Warley, supra,* that the doctrine of McRaa *v.* Smith, though established, was not to be extended, and that in such case the possession of successive purchasers could not be united in order to make out the period required by the statute. But in this case there is no question of that kind. There is no need of uniting possessions, for there was but one purchaser, the defendant, who claims to have held adversely for more than the whole statutory period. In this respect, the case is precisely like that of McRaa *v.* Smith, in which there was one continuous possession in the defendant, Smith, for the whole period necessary; and it follows that the ruling must be the same as it was in that case. Of course, it is not intended to conclude anything as to the *bona fides* of the deed to the defendant, R. C. Garvin, or as to the adverse character of his possession under it. See *McCord* v. *McCord,* 3'S. C., 577.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court for a new trial, in accordance with the conclusions herein announced.